# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **Donna Marie Newman,** : | |
| **Administrator of the Estate of** : | |
| **Ryan Michael Johnson,** : | |
| **c/o Cooper & Elliott, LLC** : | |
| **305 West Nationwide Boulevard** : | |
| **Columbus, Ohio 43215,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| vs. : | |
| : | |
| **Franklin County, Ohio** : | |
| **c/o Franklin County Prosecuting Attorney** : | |
| **373 South High Street, 14th Floor** : | |
| **Columbus, Ohio 43215** : | |
| : | **COMPLAINT** |
| **and** : | |
| : | |
| **Dallas Baldwin, in His Official Capacity as** : | **JURY DEMAND** |
| **Franklin County Sheriff,** : | **ENDORSED HEREON** |
| **373 South High Street** : | |
| **Columbus, Ohio 43215** : | |
| : | |
| **and** : | |
| : | |
| **Marilyn Brown, John O'Grady, and Kevin** : | |
| **Boyce in Their Official Capacity as the** : | |
| **Franklin County Board of Commissioners,** : | |
| **373 South High Street, 26th Floor** : | |
| **Columbus, Ohio 43215** : | |
| : | |
| **and** : | |
| : | |
| **Naphcare, Inc.** : | |
| **2090 Columbiana Road, Suite 4000** : | |
| **Birmingham, Alabama 35216** : | |
| : | |
| **and** : | |
| : | |
| **Jonathan L. Portwood, RN** : | |
| **c/o Franklin County Sheriff's Office** : | |
| **373 South High Street** : | |

| | |
|---|---|
| **Columbus, Ohio 43215** | : |
| | : |
|     and | : |
| | : |
| **Andrew Spears, NP** | : |
| **c/o Naphcare, Inc.** | : |
| **2090 Columbiana Road, Suite 4000** | : |
| **Birmingham, Alabama 35216** | : |
| | : |
|     and | : |
| | : |
| **Marsha Burgess, ARNP** | : |
| **c/o Naphcare, Inc.** | : |
| **2090 Columbiana Road, Suite 4000** | : |
| **Birmingham, Alabama 35216** | : |
| | : |
|     and | : |
| | : |
| **Cara Stefanko, NP** | : |
| **c/o Franklin County Sheriff's Office** | : |
| **373 South High Street** | : |
| **Columbus, Ohio 43215** | : |
| | : |
|     and | : |
| | : |
| **Does 1–20** | : |
| **addresses unknown,** | : |
| | : |
|         **Defendants.** | : |

## **COMPLAINT**

1.     Inmate death by suicide is a major problem in our country's jails, including here in Franklin County. Since 2009, at least 14 people have died by suicide in the Franklin County corrections centers operated by the Franklin County Sheriff. Despites these numerous suicide deaths, the county has failed to implement appropriate suicide-prevention and mental health screening and treatment strategies. Those failures led to the unnecessary death of 37-year-old Ryan Johnson.

2. When Ryan arrived at the Franklin County Jail as a pretrial detainee a week before Christmas in 2018, he needed help. Franklin County sheriff's deputies had taken him to the Doctor's West emergency room because he reportedly had ingested an unknown white powder substance used to cut drugs. They then brought him straight to the Jail. He was dirty, disheveled, and anxious. He had a known history of substance abuse. And the Jail's own screenings of Ryan from earlier visits documented Ryan's history as a chronic IV drug user and having mental health problems. On at least one earlier visit, Jail staff placed him on suicide watch after he reported that the courts indicated he was highly suicidal. Yet in December 2018, after a very perfunctory intake process, Ryan was placed in a single person cell. He should have been placed on mental health or suicide watch. Tragically, Ryan died by suicide in his cell less than 24 hours after he arrived at the Jail. He used his Jail-issued bedsheet to hang himself. Donna Newman, Ryan's mother and the Administrator of his Estate, brings this action for Ryan's wrongful death and the defendants' violations of his civil rights.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Donna Marie Newman is an individual who brings this case in her capacity as the Administrator of the Estate of Ryan Johnson. The Estate is administered in the probate court of Franklin County, Ohio (where Ryan lived and died).

4. Defendant Franklin County is a political subdivision in the State of Ohio. This Court has personal jurisdiction over Franklin County it is situated in Ohio and in this judicial district.

5. Defendant Dallas Baldwin is the Franklin County Sheriff. Sheriff Baldwin is sued in his official capacity. This Court has personal jurisdiction over defendant Baldwin because he holds his office in Franklin County, Ohio.

6. Defendants Marilyn Brown, John O'Grady, and Kevin Boyce are the Franklin County Commissioners. These defendants are sued in their official capacities. This Court has personal jurisdiction over these defendants because they hold their offices in Franklin County, Ohio. This Complaint refers to these defendants, along with defendant Baldwin and defendant Franklin County, collectively as the "County Defendants."

7. Defendant Naphcare, Inc. is an Alabama corporation with its principal place of business in Alabama. At all relevant times, the County Defendants contracted with Naphcare to provide healthcare services in the Franklin County Jail. This Court has personal jurisdiction over Naphcare because the causes of action in this case arise from Naphcare's transacting business in Ohio, contracting to supply services in Ohio, and causing tortious injury by an act or omission in Ohio.

8. Defendant Jonathan L. Portwood, RN, is an individual and, on information and belief, a citizen of Ohio. At all relevant times, defendant Portwood was acting as an employee or agent of the County Defendants or Naphcare and was acting within the scope of that employment or agency. This Court has personal jurisdiction over defendant Portwood because he resides in Ohio and because the causes of action in this case arise from his contracting to supply services in Ohio and causing tortious injury by an act or omission in Ohio. Defendant Portwood is sued in his individual capacity.

9. Defendant Andrew Spears, NP, is an individual and, on information and belief, a citizen of Alabama. At all relevant times, defendant Spears was acting as an employee or agent of the County Defendants or Naphcare and was acting within the course and scope of that employment or agency. This Court has personal jurisdiction over defendant Spears because he resides in Ohio and because the causes of action in this case arise from his contracting to supply

4

services in Ohio and causing tortious injury by an act or omission in Ohio. Defendant Spears is sued in his individual capacity.

10. Defendant Marsha Burgess, NP is an individual and, on information and belief, a citizen of Alabama. At all relevant times, defendant Burgess was acting as an employee or agent of the County Defendants or Naphcare and was acting within the course and scope of that employment or agency. This Court has personal jurisdiction over defendant Burgess because the causes of action in this case arise from her contracting to supply services in Ohio and causing tortious injury by an act or omission in Ohio. Defendant Burgess is sued in her individual capacity.

11. Defendant Cara Stefanko, NP is an individual and a citizen of Ohio. At all relevant times, defendant Stanko was acting as an employee or agent of the County Defendants or Naphcare and was acting within the course and scope of that employment or agency. This Court has personal jurisdiction over defendant Stefanko because she resides in Ohio and because the causes of action in this case arise from her contracting to supply services in Ohio and causing tortious injury by an act or omission in Ohio. Defendant Stefanko is sued in her individual capacity.

12. Defendants Does 1–20 are unknown corrections officers or health care and mental health staff of the Franklin County Jail who participated in the intake, screening, and oversight of Ryan at the Jail in December 2018. At all relevant times, Does 1–20 were acting as employees or agents of Franklin County, the Franklin County Sheriff, and/or Naphcare, and were acting within the course and scope of that employment or agency. This Court has personal jurisdiction over Does 1–20 because the causes of action in this case arise from their contracting to supply

5

services in Ohio and causing tortious injury by an act or omission in Ohio. Does 1–20 are sued in their individual capacities.

13. This Court has original jurisdiction over the federal claims in this matter under 28 U.S.C. § 1331 because they arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction over the state law claims in this matter under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims.

14. Venue is proper in this judicial district because one or more of the defendants reside in this district and all of the defendants are residents of Ohio for venue purposes, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND FACTUAL ALLEGATIONS

15. Ryan Johnson arrived at Franklin County Corrections Center I (the "Franklin County Jail" or simply, the "Jail") the night of December 17, 2018. The Franklin County Sheriff's Office operates and oversees the Franklin County Jail.

16. Franklin County sheriff's deputies had brought Ryan to the Jail straight from Doctor's West hospital. They had arrested him for drug possession earlier that night, but took him to the hospital first because when they had stopped Ryan, he told them that he had consumed a large amount of an unknown white power used to cut other drugs.

17. When Ryan arrived at the Jail, defendant Portwood conducted a grossly and recklessly inadequate intake and mental health screening of Ryan. The screening ignored signs that Ryan was a suicide risk.

18. Ryan had numerous prior visits to the Jail. His suicide risk was documented in the Jail's own records from one or more prior visits. In fact, intake records from an earlier visit

6

indicated that when asked about suicidal ideation, he started looking away and avoiding eye contact before hesitantly saying no, and then stating that the courts had notified him he was a high suicide risk.

19. Intake records from one or more prior visits to the Jail also indicated that Ryan had chronic mental health problems, that he was severely depressed, that he was receiving or had received treatment and psychiatric hospitalization for mental health issues, and that he used heroin.

20. Ryan had even been placed on safety watch for suicide risk on at least one prior visit to the Jail.

21. At his December 17, 2018 intake, Ryan disclosed his heroin use to Defendant Portwood. He also appeared dirty, disheveled, and anxious.

22. All of this information was readily available to defendant Portwood in the Jail's records. Despite this, defendant Portwood indicated inaccurate or incomplete answers to important questions in the intake screening process. Defendant Portwood even indicated some answers that directly contradicted the Jail's own records about Ryan. For example, defendant Portwood falsely indicated that Ryan had not received treatment for mental health issues and had not had any psychiatric hospitalizations. These answers conflicted with information in the Jail's records about Ryan from 2017, in which Jail staff documented that Ryan was severely depressed and had received mental health treatment and hospitalization in 2017.

23. In addition to the written information in the Jail's own records about Ryan and the explicit verbal information Ryan provided defendant Portwood on intake, Ryan's appearance and mannerisms during defendant Portwood's screening of Ryan, as well as the history surrounding

7

Ryan's arrival at the jail, provided additional warning that Ryan was at a high risk of death by suicide.

24. Defendant Portwood knew or should have known that Ryan had a high risk of death by suicide. Had defendant Portwood conducted an appropriate intake screening and given appropriate attention to the Jail's own records about Ryan, Ryan would have been placed on safety watch, which would have prevented his death.

25. Defendants Spears and Burgess reviewed the Jail's records about Ryan on or around December 18, 2018 and made determinations relating to his placement and care at the Jail. Based upon the information available to them by reviewing these records, defendants Spears and Burgess knew or should have known that Ryan had a high risk of death by suicide. Had Defendants Spears and Burgess reviewed the available records and made appropriate determinations about Ryan, Ryan would have been placed on safety watch, which would have prevented his death.

26. Defendant Stefanko was responsible for providing medical and/or mental health care to Ryan at the Jail on December 18, 2018. Ryan was in Court when defendant Stefanko initially called to treat him that morning. Based upon the information available to defendant Stefanko, defendant Stefanko knew or should have known that Ryan had a high risk of death by suicide, and therefore that assessing Ryan and providing him the care he needed as soon as possible was a priority. Despite this, on information and belief, defendant Stefanko did not assess and treat Ryan or attempt to assess and treat Ryan that day. Had defendant Stefanko reviewed the available records, made appropriate determinations about Ryan, and properly assessed and treated Ryan, Ryan would have been placed on safety watch, which would have prevented his death.

27. Instead of receiving a safety watch placement as he should have, Ryan received a placement that did not remove objects likely to cause a death by suicide and that did not involve the checking and intervention intervals and steps sufficient to prevent a death by suicide.

28. As a direct and proximate result of the defendants' failures, Ryan died by suicide in his cell at the Jail on December 18, 2018.

29. By virtue of Naphcare's contract and relationship with the County Defendants, at all times relevant to this case:

    a. defendants Naphcare, Portwood, Spears, Burgess, and Stefanko were exercising powers traditionally exclusively reserved to government actors (including providing medical and mental health services to inmates in jail custody);

    b. the County Defendants exercised such coercive power or significant encouragement that the relevant acts and omissions of defendants Naphcare, Portwood, Spears, Burgess, and Stefanko must be deemed those of the County Defendants;

    c. the nexus between the County Defendants and the relevant acts and omissions of defendants Naphcare, Portwood, Spears, Burgess, and Stefanko is so close that the acts and omissions of defendants Naphcare, Portwood, Spears, Burgess, and Stefanko may be fairly treated as the acts and omissions of the County Defendants; or

    d. the relevant acts and omissions of defendants Naphcare, Portwood, Spears, Burgess, and Stefanko are so entwined with the County Defendants' functions and policies, and vice versa, that defendants Naphcare,

9

Portwood, Spears, Burgess, and Stefanko are fairly subject to constitutional standards.

### COUNT ONE: 5TH AND 14TH AMENDMENT DUE PROCESS VIOLATIONS
(Defendants Naphcare, Portwood, Spears, Burgess, Stefanko and Does 1–20)

30. Plaintiff incorporates the above allegations by reference as if fully realleged here.

31. Ryan, an arrestee with a disability, was in a special relationship with the defendants within the meaning of the case law interpreting 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments, which guarantee equal protection of the laws and prohibit any person acting under color of law from subjecting any person in custody to punitive conditions of confinement without due press of law.

32. Defendants Naphcare, Portwood, Spears, Burgess, Stefanko, and Does 1–20, acting under color of law, intentionally and with conscious, callous, and unreasonable indifference deprived Ryan of his constitutional rights to due process and equal protection.

33. These defendants' above-described acts and omissions constitute deliberate indifference to Ryan's serious medical needs, were unreasonable, and violated Ryan's rights to equal protection and due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.

### COUNT TWO: 42 U.S.C. § 1983 *MONELL* LIABILITY
(County Defendants)

34. Plaintiff incorporates the above allegations by reference as if fully realleged here.

35. The acts and omissions of defendants Naphcare, Portwood, Spears, Burgess, Stefanko, and Does 1–20 were taken pursuant to one or more interrelated de facto as well as explicit policies, practices, or customs of the County Defendants, which include, among others:

10

a. failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control, corrections officers and health care/mental health providers;

b. failing to appropriately and timely identify serious mental health medical issues and needs of detainees like Ryan;

c. failing to appropriately recognize suicidal tendencies in detainees, like Ryan, despite clear indications of such tendencies;

d. failing to timely refer detainees like Ryan for appropriate mental health medical services, despite clear indications of serious need;

e. failing to place detainees like Ryan on safety watch even though known to be at high risk of death by suicide;

f. failing and refusing to adequately and timely communicate critical information regarding mental health, including risk of suicide, including without limitation information contained in the defendants' own records about detainees like Ryan;

g. failing and refusing to provide adequate care, treatment and/or supervision for potentially suicidal detainees like Ryan;

h. failing and refusing to take adequate preventative measures upon discovery of suicidal tendencies of detainees like Ryan;

i. failing and refusing to correct, discipline, and follow up on deficiencies noted in care, treatment and/or supervision of detainees; or

j. possessing knowledge of deficiencies in the policies, practices, customs and procedures concerning detainees, and approving or deliberately turning a blind eye to these deficiencies.

36. In particular, Jail correctional officers, health care/mental health providers, and other employees or agents are not properly trained in how to intake, screen, identify, refer and/or handle detainees with mental health issues, including persons at high risk of suicide, to avoid exacerbation of their symptoms and to manage and control the mental and physical health of detainees, and to protect detainees in relation to these risk factors.

37. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged, inter alia, the failure to adequately observe detainees to identify problematic behavior and interrupt any suicide attempt, the failure to adequately screen detainees for mental health status and suicidal tendencies and related risks, the failure to provide preventative health care to avoid suicide, failure to respond appropriately to requests for mental health care and expression of suicidal ideation, and the failure to provide adequate resuscitation equipment and training.

38. Further, the constitutional violations and damages to Ryan that occurred as described herein were directly and proximately caused by: The unofficial and/or official, tacit and/or expressed policies, customs, and practices; and otherwise unconstitutional policies of authorized policy makers of the County Defendants, who deliberately ignored subjecting detainees to unreasonable risk of harm, deliberately ignored violations of appropriate intake and screening procedures, and deliberately failed to supervise and control correctional officers and health care/mental health providers so as to prevent violations of detainees' rights.

39. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and, encouraged Defendants Naphcare, Portwood, Spears, Burgess, Defanko, and Does 1–20 to commit the above-described acts and omissions against Ryan and therefore acted as direct and proximate causes of said constitutional violations, and resulting death.

40. The foregoing policies, practices, and customs maintained by the County Defendants violated Ryan's rights to equal protection and due process under the Fifth and Fourteenth Amendments.

### COUNT THREE: DISABILITY DISCRIMINATION UNDER ADA AND § 504
### (County Defendants)

41. Plaintiff incorporates the above allegations by reference as if fully realleged here.

42. The County Defendants are, and were at all relevant times, recipients of federal funds covered by the mandate of Section 504 of the 1973 Rehabilitation Act (29 U.S.C. § 794). Section 504 requires covered entities to reasonably accommodate persons with disabilities in their facilities, program activities, and services and to reasonably modify such facilities, services, and programs to accomplish this purpose.

43. Further, Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131–12134) applies to the County Defendants and has essentially the same mandate as Section 504.

44. The County Defendants failed and refused to reasonably accommodate Ryan's mental disabilities and to modify their jail facilities, operations, services, accommodations, and programs to reasonably accommodate Ryan's disability, in violation of Section 504 and ADA Title II.

45. The County Defendants' failure directly and proximately caused Ryan's death.

### COUNT FOUR: STATE LAW WRONGFUL DEATH
### (All Defendants)

46. Plaintiff incorporates the above allegations by reference as if fully realleged here.

47. The defendants owed Ryan a duty of care.

48. Through their acts and omissions described above, the defendants breached their duty of care to Ryan, and did so negligently and with malicious purpose, in bad faith, or in a wanton or reckless manner.

13

49.     At all relevant times, defendants Portwood, Spears, Burgess, Stefanko, and Does 1–20, were employees or agents of defendant Naphcare or the County Defendants and were acting within the course and scope of their employment or agency.

50.     The defendants' acts and omissions directly and proximately caused Ryan's death.

**WHEREFORE,** plaintiff requests judgment in her favor and against the defendants allowing compensatory and punitive damages in an amount to be determined at trial, allowing her attorney fees and costs to prosecute this action, and allowing such further relief as the Court deems proper.

Respectfully submitted,

/s/ Barton R. Keyes
Charles H. Cooper, Jr.          (0037295)
chipc@cooperelliott.com
Barton R. Keyes                 (0083979)
bartk@cooperelliott.com
Cooper & Elliott, LLC
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorneys for Plaintiff
Donna Marie Newman, Administrator of the
Estate of Ryan Michael Johnson

## **JURY DEMAND**

Plaintiff demands a trial by jury by the maximum number of jurors allowed by law on all issues so triable.

/s/ Barton R. Keyes